[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CT Page 7291
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Roberta L. DiMattina, were married on October 9, 1965 in Brooklyn, New York. At least one of the parties has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage. There are two adult children issue of this marriage. The defendant does not have any minor children. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. The court finds that in 1973 the plaintiff became involved with another woman. That relationship lasted for approximately six months from October, 1973 to April, 1974. During the six months that the plaintiff was involved in that relationship, he rented an apartment in New York but denied to the defendant that he was involved in any relationship.
In May, 1998, the plaintiff began an intimate sexual relationship with another woman. That relationship continues to the present time. He initially moved to a motel for a few days and then rented a room for a few months. He then spent some time at his mother's residence. He then occupied a rental apartment from October, 1998 to June of 1999. In June of 1999, he moved in with this other woman and has continued to reside with her. He is presently involved with coauthoring a book with her and has given joint speaking presentations with her.
When he first moved in with the woman he presently resides she was still married. He moved in with her a few days after her then husband vacated the residence that she occupies. He first met the woman he is residing with in December of 1997, and commenced to have sexual relations with her in May of 1998. He vacated the family residence about one month after he commenced to have sexual relations with her. In June of 1998, he was falsely denying to the defendant and to the defendant's therapist that he was involved with another woman.
From the evidence presented, the court finds that the cause of the breakdown of the marriage is the plaintiff's relationship with the woman that he continues to reside with.
The plaintiff is fifty-five years old. He was born on October 2, 1944. After obtaining a degree from St. John's, he then obtained a master's degree at Queen's College in 1996 in communications. He presently teaches CT Page 7292 speech. In 1968, he obtained a Ph.D. in Illinois.
The plaintiff has chronic back problems, otherwise he is generally in fine health. He had been taking Prozac but has not used it since 1998.
The plaintiff is presently employed as an associate professor at Lehman College of the City University of New York. His gross weekly wages is $1381.12. As shown on his financial affidavit dated March 14, 2000, he has total deductions of $539.28 for net weekly wage of $841.85. He also has from other income consisting of royalties/speaking gross weekly income of $33.06 less weekly deductions for federal and state income tax of $9.37 for net weekly income from other sources of $23.69. He also has dividends/interest income of $30.08 weekly. His total combined net weekly income is $895.62.
The plaintiff's present weekly expenses are $922.79 as shown on his financial affidavit dated March 14, 2000, although $61.75 weekly of that amount is for care of his mother which is not paid to his mother on a regular basis.
The plaintiff has a checking account at Dime Savings Bank with a balance of $3169 and a savings account at Dime Savings Bank with a balance of $3919. He has a checking account at NMBT with a balance of $284.26. He shows a $10,000 estimated balance at Fleet Bank. The Fleet Bank accounts consists of two accounts at Fleet Bank both in the name of the defendant, one of which is a Fleet partnership account (money market) with a balance of $6546, and a second is a Fleet checking account in the name of the defendant with a balance of $3817.77. The plaintiff has the following deferred compensation plans: (a) TIAA/CREF retirement annuity with a balance as of March 14, 2000 of $1,067,787; (b) TIAA/CREF supplemental retirement annuity with a balance of $493,695 as of March 14, 2000; and (c) Zenith Accumulator IRAs (2) with a balance of $84,143.38. He also has various stocks and bonds shown as Schedule C attached to his financial affidavit dated March 14, 2000 consisting of the following:
 Stock owned solely in name of Joseph A. Ilardo. Income takes on dividends paid jointly by plaintiff and defendant in recent years.
100 shrs. Fluor Corp. @ 26 11/16 $ 2,668.75
 Stocks owned jointly in names of plaintiff and defendant. Income taxes on dividends paid jointly in recent years. CT Page 7293
 588 shrs. GTE @ 69 3/16 $ 40,690.00 221 shrs. Nat. Data Corp. @ 29 1/8 6,436.62 2 shrs. Blount Corp. @ ? (est.) 200.00 ----------- $ 47,690.00
 Bonds — some owned solely in name of Joseph A. Ilardo and some joint-owned. (est.) 16,000.00
The plaintiff owns two vehicles a 1997 Nissan with a value of $9000, and a 1991 Mazda with a value of $2500. He purchased the Nissan on June 16, 1998.
Between June 22, 1999 and March 14, 2000, the plaintiff paid out the following amounts for the following purposes: (1) gift to the parties' daughter $3000; (2) gift to the parties' other daughter $3000; (3) Armoire purchase $3500; (4) new bicycle purchase $1600; (5) purchase of new bicycle for the plaintiff's current female companion $900; (6) money that he presently has in the vault that is not shown on his financial affidavit that he claims to intend to spend for his mother $2000; (7) stereo system purchased $1500; (8) computer purchase $2500. The Armoire purchase is not shown on his financial affidavit nor is the bicycle purchase nor is the stereo purchase nor is the computer purchase. The plaintiff also removed $3500 from a joint safe deposit box to a safe deposit box in his name only in approximately February 1, 2000.
The parties own a family home located at 8 Chestnut Hill Drive, New Fairfield, Connecticut. The legal description for this home is found in volume 116 page 762 of the New Fairfield land records. From the evidence presented, the court finds that the fair market value of the property is $320,000. The mortgage balance on the family home is $9428.77 for a net equity of $310,571.23.
During the calendar year 1995, the parties had gross taxable wages of $93,480.
During the calendar year 1996, the parties had gross taxable wages of $106,435.
During the calendar year 1997, the parties had gross taxable wages of $112,061.
During the calendar year 1998, the parties had gross taxable wages of $113,921.
During the calendar year 1999, the plaintiff had gross taxable wages from CT Page 7294 the City University of New York of $67,646.72.
During the calendar year 1998, the gross taxable wages of the defendant from her Board of Education position was $56,771.97.
During the calendar year 1998, the plaintiff's gross income from his university position was $67,234.34.
During the calendar year 1999, the plaintiff's gross wages from his teaching position was $67,646.72.
During the calendar year 1995, the plaintiff had gross income of $46,113 from his part-time therapy business, and net taxable income of $38,049.
During the calendar year 1996, the defendant had gross receipts of $46,302 and net profit of $32,380 from his therapy business.
During the calendar year 1997, the plaintiff had gross receipts from his part-time therapy business known as Care Givers, LLC of $48,273 and net taxable income of $33,090.
During the calendar year 1998, the plaintiff had net taxable income from Care Givers, LLC of $26,722.
During the calendar year 1999, the plaintiff had gross receipts from his part-time therapy business of $14,104 and net taxable income of $7562.
The plaintiff closed down his therapy practice in June, 1999.
During the calendar year 1995, the plaintiff had part-time gross income from writing of $3097 and net taxable income of $2359.
During the calendar year 1996, the plaintiff had gross income from writing of $1329 and net taxable income of $516.
During the calendar year 1997, the plaintiff had gross income from writing of $2007 and net taxable income of $1527.
During the calendar year 1998, the plaintiff had gross income of $4142 from writing and net taxable income of $3528.
During the calendar year 1998, the plaintiff had net taxable income from royalties from New Harbinger Publications of $3142.08.
The plaintiff had one book published in 1995 or 1996. His royalties CT Page 7295 from that book consisted of a $3000 advance and an additional approximate $2000 since the book was published. He has a second book for which he received a $1750 advance and no further income since it was published in 1998. He receives approximately $300 for each speaking engagement.
During the calendar year 1995, the defendant had gross part-time income of $2725 and net taxable income of $1326.
During the calendar year 1996, the defendant had gross income from consulting/workshops of $1535 and net taxable income of $767.
During the calendar year 1997, the defendant had gross part-time income from consulting/workshops of $690, and net taxable income of $122.
During the calendar year 1997, the defendant also had income from Care Givers, LLC of $1654.
Following the marriage of the parties, they had two children who are now both adults. The second child was born in 1972. The defendant went to work full-time in 1982 as a reading consultant. She is presently an assistant principal. She obtained a master's degree at Western and another degree at Southern Connecticut State.
The defendant has previously suffered from a broken ankle and a partially ruptured tendon in November, 1999. She has since been re-injured and will need surgery. The defendant was born on December 16, 1943.
Many of the assets shown on the defendant's financial affidavit are also shown on the plaintiff's financial affidavit. The Fleet Bank shown on the plaintiff's affidavit with an estimated balance of $10,000 is the same Fleet account shown on the defendant's financial affidavit under category (2 D bank accounts) with a balance in one account of $6546 and a balance in a second account of $3817. The defendant also has a Waterbury Teacher's Credit Union account in her name only with a balance of $4701. She has 800 shares of Smith Kline stock with a value of $45,000 that is also shown on Schedule C of the plaintiff's financial affidavit.
The stocks that she shows on her financial affidavit with GTE, National Data, and Blount International are the same stocks that are shown on the plaintiff's financial affidavit. The parties also own joint bonds. The plaintiff on his financial affidavit lists the value of those joint bonds on Schedule C as $23,000. Those are the same bonds listed on the plaintiff's financial affidavit under the following categories: (a) Joint bonds $2752, (b) bonds (HUSB name) $14,000, (c) E.E. bonds to be received from the defendant's mother's estate with a value of $6919. CT Page 7296
Since November, 1999, the defendant has purchased jewelry at a cost of $2500 that is not shown on her financial affidavit. The defendant presently holds the position of assistant principal with the New Fairfield public school system. Her annual salary for the school year 1999-2000 is $72,659 or a gross weekly income of $1397.29. She has weekly deductions totaling $597.58 as shown on her financial affidavit dated March 14, 2000. The weekly deduction for supplemental retirement of $148.20 is not mandatory. She also has interest and dividend income estimated for the calendar year 2000 at $22,000 gross yearly, less estimated taxes at 22 percent for gross weekly of $423.07 and a net weekly of $331.42. The combined net weekly income from all sources if $1131.13. She worked part-time for the board of education December of 1999 earning an additional $3000, which part-time employment is unlikely to occur again. She owns a 1994 Nissan with a fair market value of $10,000 and no loan. Her present gross weekly expenses is $1515. She has had to invade some her assets to make up for the deficit between her total net income and her total weekly expenses which was done with the plaintiff's permission.
The defendant's mother died on May 25, 1999, and the defendant now owns stock and other assets that had been in her mother's name and in the name of her mother and the defendant jointly.
The following is the list of the defendant's assets received from her mother and liabilities that have already been paid as well as continuing liabilities:
 1. Land and buildings (previously owned by the defendant's mother) at 569 16th St., Brooklyn, N.Y. Est. value $350,000. The Defendant's brother claims that this property was transferred to him before the mother's death and he has recorded a Deed with a claimed forged signature on the same.
Because the house cannot be sold at the present time, continuing expenses to be paid are as follows monthly:
 Caretaker $ 400.00 Utilities $ 100.00 Real Estate Taxes $ 151.00 Insurance $ 56.00 Maintenance $ 100.00 -------- TOTAL $ 807.00 mo.
 2. The defendant's mother owned a mortgage in the face CT Page 7297 amount of $270,000 at the time of her death. She assigned the mortgage to the Defendant. The Defendant's brother claims that the mortgage was previously assigned to him and therefore, the mortgage is in controversy. The defendant's brother has another document with a claimed forged signature of the defendant's mother. The matter is in active litigation in New York, no trial date has been established.
In entering the financial orders hereinafter entered, this court has not considered the defendant's interest in the Brooklyn property or in the mortgage because the value of her interest cannot be determined until the pending litigation and disputes have been resolved. Depending upon the results of the litigation and disputes involving the Brooklyn property and/or the mortgage, the periodic alimony hereinafter awarded may be modified based on a substantial change in financial circumstances of the defendant.
 3. The Defendant also has the following assets from her mother after the payment of $395,000 in federal and state taxes on 2/17/00:
 a. New Milford Savings Accounts $ 14,478.00 b. Citibank Checking Account $ 11,000.00 c. Astoria Federal $ 2,595.00 d. Fleet Money Market Account $ 23,896.00 e. Fleet Annuity $ 90,000.00 f. Merrill Lynch CMA Account $ 4,675.00 ----------- TOTAL: $146,644.00
 4. Stocks owned solely in name of Roberta L. Ilardo (formerly jointly with her mother), using the mother's social security number until her death May 25, 1999. Income taxes on dividends now paid solely by the defendant.
 4,200 shrs. Pfizer @ 34 3/8 $144,375.00 602 shrs. GTE @ 69 3/16 41,650.00 318 shrs. Keyspan Corp. @ 20 13/16 6,618.00 204 shrs. Pact IV @ 7 7/8 1,606.50 40 shrs. Tenneco Automotive @ 7 7/16 297.50 ----------- $194,547.00
Plus: CT Page 7298
 3. Stocks owned solely in name of Roberta L. Ilardo (formerly jointly with her mother), using Roberta's social security number. Income tax on dividends paid on plaintiff and defendant's joint income tax return.
 5,000 shrs. Sprint Corp. FON @ 63 $315,000.00 2,500 shrs. Sprint Corp. PCS @ 58 1/4 145,625.00 ----------- $460,625.00
 Estate debts already paid in addition to $395,000 in federal and state taxes:
 Attorney Silver $ 10,000.00 Attorney Goldberg $ 7,000.00 Attorney Forster $ 12,000.00 Funeral $ 7,000.00 House expenses $ 5,000.00 Attorney's Fees — Probate $ 605.00 Caretaker Fees $ 3,200.00
Estate Liabilities to be paid:
 Accountant's Fees $ 1,000.00 Attorney Forster Est. $ 20,000.00 Attorney Silver $ ? Attorney Goldberg (litigation) $ ?
Defendant's mother's additional assets not yet transferred to defendant:
 300 shares — Columbia Energy $ 15,981.75 EE Bonds $ 6,919.20 ----------- $ 22,837.95
This court has considered the provision of § 46b-82 regarding the issue of alimony, and has considered the provision of § 46b-81 (c) regarding the issue of property division, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
 ORDERS
A. BY WAY OF DISSOLUTION CT Page 7299
1. The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is to pay the defendant alimony in the amount of $1 per year.
2. Alimony is to terminate upon the death of the plaintiff or the death of the defendant.
3. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
4. The defendant is ordered to notify the plaintiff in writing by registered mail return receipt or certified mail return receipt within fifteen days from the time the dispute involving the Brooklyn home and/or the dispute involving the mortgage received from her mother has been resolved.
C. BY WAY OF PROPERTY ORDERS
1. The 1991 Mazda and 1997 Nissan Altima motor vehicles shown on the plaintiff's financial affidavit are awarded to the plaintiff. The defendant is awarded the 1994 Nissan shown on the defendant's financial affidavit.
2. All of the various pension and retirement accounts and plans of both parties are ordered equally divided. The parties are ordered to equally share the costs of the preparation of all Qualified Domestic Relations Orders and Domestic Relations Orders necessary to accomplish the same . . . The plans to be divided are as follows:
 (a) The defendant has a Connecticut Teacher's Retirement Plan
Defined Benefit Annuity Form. Lump distribution is not available.
This is ordered equally divided.
 (b) The defendant has a TSA $ 48,925.00 The defendant has a Zenith Fund $ 48,107.00 The defendant has a Delaware Investment $ 76,293.00 CT Page 7300
All of those are to be equally divided.
 (c) The plaintiff has two Zenith accumulator IRAs $ 84,143.38 (these two IRAs are ordered equally divided)
 (d) The plaintiff has TIAA/CREF retirement annuity $1,067,787.00 The plaintiff has TIAA/CREF supp. retirement annuity 493,695.00
The TIAA/CREF retirement annuity and the TIAA/CREF supplemental retirement annuity are ordered divided equally between the parties.
3. The following assets shown on the plaintiff's financial affidavit are awarded to the plaintiff: (a) Dime savings checking account with a balance of $3169; (b) Dime savings account with a balance of $3919; (c) MNBT checking with a balance of $284.26.
4. The plaintiff is ordered to quitclaim the defendant all of his right, title and interest in the family residence located at 8 Chestnut Hill Drive, New Fairfield, Connecticut. The defendant is to pay the home equity line of credit and hold the plaintiff harmless therefrom. This transfer is to be completed by July 20, 2000.
5. The following assets shown on the defendant's financial affidavit are ordered divided 25 percent to the plaintiff and 75 percent to the defendant: (a) 800 shares Smith Kline stock; (b) New Milford savings account, Citibank checking account, Astoria Federal account, Fleet money market account, Fleet annuity, and Merrill Lynch CMA account (all received from the defendant's mother); (c) Merrill Lynch account consisting of GTE stock, Keyspan, Pact IV, Pfizer, and Tenneco (all received from the defendant's mother); (d) Sprint FON stock, and Sprint PCS stock (still in the name of the defendant and her mother).
6. The following items shown on Schedule B to the plaintiff's financial affidavit dated March 4, 2000 are awarded to the plaintiff. All values are those shown on the plaintiff's financial affidavit unless otherwise noted: items number 1, 2, 3, 4, 5, 7, 9, 11, 17, 23, 24, 29, 30, 36, 44, 45, 47, 48, 50, 51, 52 and items 54 through and including 65. The following items shown on Schedule B to the plaintiff's financial affidavit are awarded to the defendant at the values shown on the plaintiff's financial affidavit unless otherwise noted: items 6, 8, 10, 12, 13, 14 consisting of two Persian rugs at a value of $1500; 18, 19, 20, 21, 22; item 25 at a value of $4000; item 27 at a value of $500-$600; item 32, 33, 34, 35 at a value of $50; 37 with a value of $3500 for which there is an insurance claim, which claim is awarded to the defendant; 38, 39; 40 at a value of $600; 41 and 43 which are the same items at a value of $7000; and 46. No order is entered regarding items 26, 28, 31 and 49. CT Page 7301
7. The 300 shares of Columbia Energy and the EE bonds shown on the defendant's financial affidavit as "assets now yet transferred from her mother's estate" are all awarded to the defendant.
8. The 588 shares of GTE stock as well as the Electro-Catheter Corporation stock, as well as the National Data Corporation stock, as well as the Blount International stock, as well as the Fluor Corporation stock, as well as the bonds that either held in joint names or in the name of the plaintiff only (but not including the 300 shares of Columbia Energy or the EE bonds to be transferred to the defendant from her mother's estate), as well as any other stock held in the name of the plaintiff or the defendant not previously divided by this decision are all ordered divided equally between the parties.
9. Twenty-five (25) percent of the gross amount of any royalty income that the plaintiff receives in the future for books already published is assigned to the defendant.
10. The Fleet partnership account, the Fleet checking account and Waterbury Teacher's Credit Union account shown on the defendant's financial affidavit with a total value of $15,064 are all awarded to the defendant.
11. All furniture and furnishings in the possession of the plaintiff not previously awarded under this decision is awarded to the plaintiff, and all furniture and furnishings in the possession of the defendant not previously awarded under this decision is awarded to the defendant.
12. The defendant's financial affidavit lists as an asset "six gold bars purchased by plaintiff." Those gold bars do not appear to be listed in Schedule B to the plaintiff's financial affidavit. If those gold bars are still in existence, then they are ordered divided equally between the parties.
13. All of the defendant's interest in the Brooklyn home and in the mortgage to be received from the defendant's mother's estate, are awarded to the defendant.
14. Neither party shows any liabilities on their respective financial affidavits. Any liability that the plaintiff has is to be paid by the plaintiff and he is to hold the defendant harmless therefrom (other than for the home equity line of credit). Any liabilities that the defendant has are to be paid by the defendant and she is to hold the plaintiff harmless therefrom.
15. The plaintiff is to remove all of the items of furniture and CT Page 7302 furnishings awarded to him under this decision from the family residence by July 20, 2000.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. The parties are ordered to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed by certified mail return receipt or registered mail return receipt for so long as there is an outstanding alimony order or any arrearage.
2. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
Axelrod, J.